**Evenor RIVAS and Continental Casualty Insurance Co., Appellants,**

v.

**CITY OF HOUSTON and Joel Calfee, Appellees.**

No. 14–98–00431–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 2, 2000.

Rehearing Overruled May 11, 2000.

Bill Robins, Houston, Robert Perry McConnell, The Woodlands, for appellants.

Richard John Urra, Andrea Chan, Houston, for appellees.

Panel consists of Justices YATES, FOWLER, and DRAUGHN.*

**OPINION ON REHEARING**

LESLIE BROCK YATES, Justice.

In response to appellant's motion for rehearing, our previous opinion is withdrawn and this opinion is substituted in its place. This appeal stems from an order granting a motion for judgment notwithstanding the verdict based on official immunity. Appellants, Evenor Rivas and Continental Casualty Insurance Co., present two issues for our review. First, whether the trial court erred in granting the motion because the city employee was not performing a discretionary function and second, whether the trial court erred in granting the motion because there was no evidence the employee was acting in good faith. The City of Houston and Joel

---

* Senior Justice Joe L. Draughn, sitting by as- signment.

Calfee raise two conditional cross-points. We affirm the trial court's judgment.

## Background

The Houston Fire Department dispatched paramedics Joel Calfee and Randy Otswald by ambulance to attend to a patient who had fallen on a stick. Calfee and Otswald decided to transport the patient to Ben Taub Hospital as a non-emergency conveyance. En route, the patient became combative, loosened his restraints, and fell off the gurney. Calfee and Otswald had to stop the ambulance on several occasions in order to restrain him. After stopping two or three times, Calfee and Otswald decided to continue the conveyance as a "Code II," or an emergency conveyance. Calfee, who was driving, then proceeded through a red light and collided with a truck driven by Rivas. While there was conflicting testimony at trial regarding whether the ambulance's emergency lights were on at the time it entered the intersection, there was no evidence that the sirens were in operation as required by state law, local ordinances and City of Houston policy. Rivas filed suit against Calfee and the City of Houston, contending Calfee was negligent and negligent per se and that the City of Houston was vicariously liable. The jury found for Rivas, but the trial court entered a judgment notwithstanding the verdict in favor of Calfee and the City of Houston.

## Standard of Review

 We review a trial court's order granting a judgment notwithstanding the verdict ("j.n.o.v.") by the same standard as a no evidence point of error, as a trial court may render a j.n.o.v. if there is no evidence to support one or more necessary findings. *See Brown v. Bank of Galveston*, 963 S.W.2d 511, 513 (Tex.1998); *Harris County v. Felts*, 881 S.W.2d 866, 872 (Tex.App.—Houston [14th Dist.] 1994), *aff'd*, 915 S.W.2d 482 (Tex.1996). We consider only the evidence and reasonable inferences supporting the jury's findings in the light most favorable to the verdict. *See Brown*, 963 S.W.2d at 513. We disregard all evidence and inferences to the contrary. *See Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996). We must uphold the findings if they are supported by more than a scintilla of evidence. *See id.* In other words, a j.n.o.v. is improperly granted if any evidence of probative force supports a contested issue. *See id.*

## Official Immunity

Rivas contends the trial court erred in granting the j.n.o.v. based on official immunity because Calfee was not acting in good faith and violated a non-discretionary requirement when he proceeded against a red light without his siren in operation.[1]

 Government employees are, under certain circumstances, entitled to official, or qualified, immunity. Official immunity is an affirmative defense which shields public employees acting within the scope of their authority from personal liability in a suit arising from employees' good faith performance of discretionary duties. *See Wadewitz v. Montgomery*, 951 S.W.2d 464, 465–66 (Tex.1997). If a government employee who committed allegedly wrongful acts is entitled to official immunity, the government branch for which he works is

---

1. Rivas also argues under point of error one that absent the defense of official immunity, the Texas Tort Claims Act imposes liability on the City of Houston for his injuries. In making this argument, Rivas points to Section 101.021, which provides for a limited waiver of sovereign immunity where property damage, personal injury, or death arises from the negligent operation or use of a motor vehicle. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(1)(A) (Vernon 1997). He further maintains that Section 101.055, which provides for an exception to the waiver of immunity, is inapplicable. *See id.* § 101.055. Section 101.055 states that immunity is not waived for a claim arising from an employee's actions in responding to an emergency call or reacting to an emergency situation so long as the action is in compliance with the applicable laws and ordinances. However, the City did not claim it was entitled to sovereign immunity based on Section 101.055 in the court below, nor has it made that argument on appeal. Therefore, we need not address it.

entitled to sovereign immunity. *See De Witt v. Harris County,* 904 S.W.2d 650, 654 (Tex.1995); *City of San Antonio v. Duncan,* 936 S.W.2d 63, 65 (Tex.App.— San Antonio 1996, writ dism'd w.o.j.). Under the doctrine of official immunity, public officials are protected from civil liability for conduct that would otherwise be actionable if they were not performing a discretionary function. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 653–54 (Tex. 1994). They are not afforded this protection, however, for ministerial acts. *See Kassen v. Hatley,* 887 S.W.2d 4, 9 (Tex. 1994).

### Good Faith

We first consider whether Calfee was performing his function in good faith. Jury question number 3 asked: "Did Joel Calfee act in good faith on the occasion in question?" An instruction accompanied the question, stating that "Joel Calfee acted in 'good faith' if a reasonably prudent ambulance driver, under the same or similar circumstances, could have believed that the need to immediately take the patient to the hospital outweighed a clear risk of harm to the public in proceeding past a red or stop signal without slowing down as may be necessary for safe operation." The jury answered the question "no."

■ Good faith depends on how a reasonably prudent officer could have assessed both the urgency of the situation to which he responds and the risks of the officer's course of action based on his perception of the facts at the time of the event. *See Wadewitz,* 951 S.W.2d at 467. The need aspect encompasses the seriousness of the situation to which the official is responding and the availability of alternative courses of action. *See id.* The risk aspect encompasses the nature and severity of the harm the official's actions could cause, the likelihood that any harm would occur, and whether any risk of harm would

be clear to a reasonably prudent official. *Id.*

In support of his contention that ample evidence supported the jury finding, Rivas points to Calfee's testimony that Calfee ran the red light without employing his siren and to Rivas's testimony that the emergency lights were not turned on until after the impact. He also argues a lack of good faith can be inferred by the City's alleged falsification of an accident report and misrepresentation on interrogatory answers. Finally, he asserts the evidence that the patient Calfee was transporting was not in immediate danger established a lack of good faith.

■ The evidence that Calfee ran the red light without a siren or emergency lights is not germane to the jury question, which described good faith only in terms of whether Calfee slowed down to proceed past a red signal.[2] Evidence that the patient was not in immediate danger is a pertinent factor in determining need, but this evidence alone cannot support the jury's finding. We turn, then, to Rivas's argument that a lack of good faith can be inferred by the City of Houston's alleged falsification of an accident report and misrepresentation on interrogatory answers.

■ Calfee's supervisor filled out an internal accident report for Calfee, who signed it. The report stated that Calfee had engaged both his lights and siren at the time of the accident. An interrogatory answered for Calfee also stated that both lights and sirens were engaged. Nonetheless, Calfee told a police officer on the night in question that the siren was not on, as evidenced by the Peace Officer's Accident Report, and Rivas testified that neither the lights nor sirens were employed at the time of the accident.

Rivas argues this evidence allows a jury to infer that the City of Houston's refusal

---

**2.** Rivas filed objections to appellees' proposed charge but did not complain of this definition of good faith. *See* Tex.R. Civ. P. 274.

to allow official documents to reflect a violation of policy regarding emergency signals constitutes an admission that a reasonably prudent officer would not have proceeded through a red light without using a siren. First, even if this was a reasonable inference from the evidence, such an inference would not support the jury finding, which, as discussed above, concerned Calfee's actions in "proceeding past a red signal *without slowing down* as may be necessary for safe operation" (emphasis added). Further, a jury would not be able to reach this inference without a stacking of inference upon inference.

Any more than a scintilla of evidence will support a jury finding. *See Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996). Evidence too weak to create more than mere surmise or suspicion of the existence of a fact, however, is no evidence. *See Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 838 (Tex. 1997). Circumstantial evidence may support a jury finding so long as it rises above mere suspicion. *See Convalescent Servs., Inc. v. Schultz*, 921 S.W.2d 731, 734 (Tex. App.—Houston [14 th Dist.] 1996, writ denied). However, if the plaintiff relies on circumstantial evidence, and the circumstances are equally consistent with either of two facts, no more than a scintilla supports the finding, and there is no evidence of this finding. *See id.* Furthermore, a vital fact may not be established by stacking an inference upon an inference. *See Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex.1968); *Engstrom v. First Nat'l Bank*, 936 S.W.2d 438, 445 (Tex.App.—Houston [14 th Dist.] 1996, writ denied). Rather, an inference must be reasonably and logically drawn from the evidence. *See Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex.1997).

Here, because there is no direct evidence that the City falsified the accident report or the interrogatory answers, to establish a lack of good faith, the jury would first have to infer from the contra-

diction between these documents and the Peace Officer's Accident Report that the City of Houston intended to misrepresent the information. However, the circumstances are equally consistent with an inference that the City was mistaken in filling out the report and in answering the interrogatory answers. Furthermore, the jury would also have to infer that the City of Houston not only intentionally misrepresented information, but that it did so because it believed that a reasonable official would not act as Calfee had done, and thus, Calfee's actions needed to be covered up. To reach this conclusion requires improper inference stacking, and as such, it is no evidence to support the jury finding.

However, our inquiry does not end there. Because immunity is an affirmative defense, Calfee and the City had the burden of proof to establish all elements of that defense. *See Woods v. Moody*, 933 S.W.2d 306, 307 (Tex.App.—Houston [14 th Dist.] 1996, no writ) (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex.1994)). Consequently, we must determine whether they established as a matter of law that Calfee acted in good faith. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

Calfee testified that prior to deciding to upgrade the conveyance (and thereby running the conveyance at an elevated urgency and faster pace), he discussed the decision with Otswald. He also stated that before entering the intersection in question, he considered that the patient's condition was worsening, the risk to the patient in not proceeding expeditiously, and the risk to his partner in dealing with an increasingly violent patient. These considerations are all germane to need. He also considered the risk to the public in proceeding, the time of day, and the traffic. After weighing these factors, Calfee determined that it was best to get the patient to the hospital quickly. Otswald concurred with this decision and stated that in his opinion that there was a high priority to get to the hospital for his safety as well as

the patient's safety, and, in his opinion, their safety justified running a Code II emergency conveyance. This evidence establishes that Calfee acted in good faith as a matter of law.

### Discretionary Function

Rivas also complains that the trial court erred in granting j.n.o.v. because the City of Houston failed to establish that Calfee was performing a discretionary function "as a matter of law" at the time of the accident. As no jury issue was submitted on whether Calfee's actions were discretionary, we interpret this challenge as one to the trial court's legal conclusion that Calfee was performing a discretionary duty. Legal conclusions made by a trial court are subject to *de novo* review. *See MCI Telecomm. Corp. v. Texas Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex.1999) (citing *Barber v. Colorado Indep. Sch. Dist.*, 901 S.W.2d 447, 450 (Tex. 1995)).

Texas law defines a discretionary act as one which requires "personal deliberation, decision, and judgment." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex.1994). By contrast, "actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial." *Id.* In this instance, Rivas maintains that Calfee's conduct was ministerial, and not discretionary, because he was merely driving the ambulance when the accident occurred. Rivas further insists that Calfee's conduct was ministerial because, once the ambulance was in "emergency mode," Calfee "had no discretion not to use his lights and sirens."

In deciding whether Calfee's conduct was discretionary, we must focus on whether he was "performing a discretionary function, not on whether [he] had discretion to do an allegedly wrongful act while discharging that function." *Harris County v. Ochoa*, 881 S.W.2d 884, 887

(Tex.App.—Houston [14 th Dist.] 1994, writ denied) (citing *Chambers*, 883 S.W.2d at 653). As noted above, Calfee testified that the patient's condition and demeanor were worsening on the way to the hospital, and that there was likewise an increasing risk to both the patient and to Calfee's partner. For those reasons, the decision was made to upgrade the conveyance to a "Code II" emergency. It has been held that a government employee's operation of a motor vehicle in a "non-emergency situation" does not require deliberation, decision, or judgment, and is therefore ministerial in nature. *See City of Wichita Falls v. Norman*, 963 S.W.2d 211, 216 (Tex.App.— Fort Worth 1998, pet. dism'd w.o.j.) (citing *Burgess v. Jaramillo*, 914 S.W.2d 246, 249 (Tex.App.—Fort Worth 1996, no pet.); *Woods v. Moody*, 933 S.W.2d 306, 308 (Tex.App.—Houston [14 th Dist.] 1996, no writ)). However, it has also been recognized that a paramedic or emergency medical technician's "decisions concerning how to transport a person to a medical facility will fundamentally involve his discretion." *City of El Paso v. Higginbotham*, 993 S.W.2d 819, 823 (Tex.App.—El Paso 1999, no pet.); *see also Carrola v. Guillen*, 935 S.W.2d 949, 952 (Tex.App.—San Antonio 1996, no writ) (observing that "emergency medical service is particularly deserving of immunity"). Because Calfee's duties at the time of the accident involved transporting a patient to the hospital on an emergency basis, we hold that the evidence establishes that Calfee was performing a discretionary function as a matter of law at the time the accident occurred.

### Conclusion

Having found that no evidence supported the jury's finding a lack of good faith and that Calfee and the City established the elements of good faith and discretionary function as a matter of law,[3] we hold that the trial court did not err in granting a judgment n.o.v. We overrule

---

**3.** The parties do not dispute that Calfee acted within the scope of his authority.

Rivas's points of error[4] and affirm the judgment of the trial court.

4. Because of our disposition of Rivas's points of error, we need not reach appellees' conditional cross-points.