Appellant’s Motion for Rehearing Denied; Concurring and Dissenting
Opinions to the Denial of Rehearing filed April 10, 2003















Appellant’s
Motion for Rehearing Denied; Concurring and Dissenting Opinions to the Denial
of Rehearing filed April 10, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-97-00153-CV

____________

 

TEXAS A&M UNIVERSITY, Appellant

 

V.

 

PAUL A. BISHOP, Appellee

 

_________________________________________________

 

On Appeal from
the 212th District Court

Galveston County, Texas

Trial Court
Cause No. 94CV0958

 

_________________________________________________

 

DISSENTING  OPINION 
TO  THE  DENIAL 
OF  REHEARING

            On remand from the Texas Supreme
Court, this Court held that Michael and Diane Wonio’s
decision to use a real knife in a drama production at Texas A&M University at Galveston, and the
faculty advisors’ negligent supervision of the production, was an act of
“professional or occupational discretion.” 
Because the defense of official immunity applies only to claims based on
the exercise of “governmental” discretion, we held Texas A&M was not
entitled to successfully assert the defense. 
On rehearing, Texas A&M contends our reliance on Kassen v. Hatley, 887 S.W.2d 4 (Tex. 1994) was
misplaced.  Because I agree, I
respectfully dissent to the denial of Texas A&M’s
motion for rehearing.

            Official immunity is an affirmative
defense.  City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex.
1994).  Case law states that official
immunity may protect state employees who are sued in their individual
capacities, see, e.g., Jackson v.
Stinnett, 881 S.W.2d 498, 500 (Tex. App.—El Paso 1994, no writ), and if the
employee is protected from liability by official immunity, the governmental
entity retains its sovereign immunity.  DeWitt v. Harris County, 904 S.W.2d 650, 653 (Tex.
1995).  When, as in this case, the
governmental unit’s liability under the Texas Tort Claims Act is based on respondeat superior for an employee’s negligence arising
from the use of tangible personal property, the governmental unit’s liability
is derivative.  Id. at
654.  Thus, official immunity, like any
other affirmative defense available to the employee, is relevant to the
governmental entity’s liability.  Id.

            The elements of the defense are (1)
the performance of a discretionary function (2) in good faith (3) within the
scope of the employee’s authority.  Chambers, 883 S.W.2d at 653.  Discretionary acts are those that “require
personal deliberation, decision, and judgment, whereas ministerial acts require
obedience to orders.”  Garza v. Salvatierra,
846 S.W.2d 17, 22 (Tex. App.—San Antonio 1992, writ dism’d
w.o.j.).

            It is undisputed that the faculty
advisors were performing discretionary duties. 
Citing Kassen,
however, Bishop contends the defense of official immunity applies only if the
discretionary acts are “governmental” in nature.  In Kassen, the court addressed whether medical doctors who work
for a government institution are entitled to official immunity.  887 S.W.2d at 9.  The court determined that, in the case of
medical personnel, there must be a distinction between “governmental” and
“medical” discretion.  Id. at
11.  The court found that, if the doctor
was exercising purely “medical” discretion, rather than policy-making or
administrative responsibilities at the time of the injury, the doctor was not
entitled to the defense of official immunity. 
Id.

            I believe
the Supreme Court intended, in Kassen, to draw a distinction only between “governmental”
and “medical” discretion, not between “governmental” and “non-governmental”
discretion generally.  First, the phrase
“non-governmental discretion” is nowhere found in the majority opinion.  Second, the court explicitly rejected drawing
a “distinction between activities that are uniquely
governmental and those that are not.”  Id. at
10.  Third, the plaintiffs framed their
argument in terms “that such actions by government-employed physicians and
nurses are only medical functions, not governmental functions.”  Id. at 9.  Fourth, the Supreme Court has never applied
this aspect of its holding in Kassen outside the medical profession.  See
Gross v. Innes, 988 S.W.2d 727 (Tex. 1998)
(holding Kassen
applies to para-medics).  Finally, and most importantly, the court
posited its holding in terms of distinguishing “between governmental and medical
discretion.”  Id. at
11.  The court summarized its holding by
stating:

We hold that government-employed medical
personnel are not immune from tort liability if the character of the discretion
they exercise is medical and not
governmental.  A state-employed doctor or nurse has official immunity
from claims arising out of the exercise of governmental discretion, but is not
immune from liability arising from the exercise of medical discretion.  Courts
should look at the character of the discretion exercised in each instance.

            This approach is not the same as the Armendarez’s “uniquely
governmental” test which focused on a state employee’s function.  Official immunity does not turn on whether a
health-care employee’s discretion was uniquely governmental or medical. 
The focus must remain upon the facts of the individual case and the
underlying policies promoted by official immunity.  We anticipate difficult cases in which
government-employed medical personnel
will have duties and responsibilities that coincide with private-sector
providers.  In such cases, if
governmental factors and concerns colored the doctor’s or nurse’s discretion, policy considerations may still
call for official immunity.  Such
decisions necessarily involve a balancing of individual rights and the public
interest.

 

Id. at 11-12
(emphasis added).

            Accordingly, the distinction between
medical and governmental discretion discussed in Kassen does not apply to the facts
of this case.  I would hold that Kassen is limited
to cases involving doctors and medical personnel employed by governmental
entities.  Because I believe Kassen is inapplicable to the facts of this
case and therefore, categorization of the type of discretion exercised is
inappropriate, I would hold there was no basis for finding the faculty advisors
were performing any function other than a discretionary one.

            Although argued only on rehearing,
Bishop states that, even if the faculty advisors were performing discretionary
duties that fact would not entitle them to official immunity because the
advisors’ actions could not have been in good faith.  Bishop claims the advisors’ decision to
violate university policy and allow deadly weapons to be wielded by Drama Club
students cannot constitute the good faith performance of a discretionary duty. 

            This argument is similar to that
made in Rivas v. City of Houston, 17
S.W.3d 23 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied).  In Rivas, the appellant claimed an
ambulance driver had no discretion not to use the lights and sirens when the
ambulance was in emergency mode.  Id. at
29.  This court responded to appellant’s
claim by stating that, under well-settled law, “we must focus on whether [the
governmental employee] was ‘performing a discretionary function, not on whether
[he] had discretion to do an allegedly wrongful act while discharging that
function’.”  Id. (quoting Harris County v. Ochoa, 881 S.W.2d 884,
887 (Tex. App.—Houston [14th Dist.] 1994, writ denied)).  Although this reasoning from Rivas concerned the element of
discretion, we find it also applicable to the good faith element because “the
good faith standard is not equivalent to a general negligence test, which
addresses what a reasonable person would
have done, rather than what a reasonable official could have believed.”  Rivas, 19 S.W.3d at 903 (quoting Wadewitz v. Montgomery, 951 S.W.2d 464, 467 n. 1
(Tex. 1997)). 

            The test of whether a governmental
employee acted in good faith is one of “objective legal reasonableness.”  City of
Lancaster, 883
S.W.2d at 656.  Under this test, the
employee will be deemed to have acted in good faith if a reasonably prudent
employee, under the same or similar circumstances, could have believed that the
employee’s acts were justified.  Vela v. Gomez, 4 S.W.3d 911, 913 (Tex.
App.—Corpus Christi 1999, no pet.)(citing Chambers,
883 S.W.2d at 656).  

            The record contains much testimony
concerning the role of the faculty advisors. 
The Dean of Texas A&M University at Galveston, David
James Schmidly, testified faculty advisors perform an
advisory role, approving financial requests and assisting with scheduling
events.  Although the responsibilities of
advisors include attendance at club meetings whenever possible, Schmidly testified that he did not believe advisors should
have attended entire play rehearsals.  Schmidly emphasized that the advisors were not compensated
for advisor activities.  Unless the
advisors attended entire rehearsals, Schmidly did not
see how the advisors could have discovered a real knife was being used in the
play.  William Charles Hearn, Senior
Student Life Affairs Dean and Executive Associate Campus Dean, testified that
advisors have a responsibility to ensure compliance with university regulations,
but he did not believe the advisors should have attended more rehearsals.  Hearn defined the advisors’ role as giving
advice, approving check requests, helping to develop student leadership, and to
oversee, but not directly supervise the clubs. 
The advisors testified that they assisted with finances and approval to
use facilities, but neither advisor attended any of the rehearsals of this
play.  Dr. Curley, one of the advisors to
the Drama Club, testified that he understood his role to be merely advisory and
not supervisory.  Curley added that if he
had known about the use of the knife, he would have taken action.

            Because the evidence showed the
faculty advisors’ role was more advisory than supervisory, a reasonably prudent
faculty advisor could have believed that there was no need to attend the play
rehearsals.  The evidence does not show
the advisors had any reason to believe direct supervision was required or
necessary.  Accordingly, the evidence
shows the faculty advisors acted in good faith as a matter of law.  Because the evidence established as a matter
of law that the faculty advisors were performing discretionary acts in good
faith, I would hold the trial court erred in refusing to grant Texas A&M’s motion for instructed verdict on the defense of official
immunity.

            For these reasons, I respectfully
dissent to the denial of Texas A&M’s motion for
rehearing.

 

                                                                                    

                                                                        /s/        J. Harvey Hudson

                                                                                    Justice

 

 

Judgment
rendered and Concurring and Dissenting Opinions to the Denial of Rehearing filed
April 10, 2003.

Panel
consists of Justices Hudson and Edelman, and Senior Chief Justice Murphy.*

 

 











            [1]  Senior Chief Justice Paul C. Murphy sitting
by assignment.