NO. 12-02-00106-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS



THE GENECOV GROUP, INC.,
§
 APPEAL FROM THE 173RD

APPELLANTS


V.
§
 JUDICIAL DISTRICT COURT OF


ROOSTH PRODUCTION COMPANY,

SAM ROOSTH AND §
 HENDERSON COUNTY, TEXAS

PLAINS MARKETING, L.P.,

APPELLEES







OPINION


 The Genecov Group, Inc., Michael D. Lewis, Charles A. Hawn, Lester Kinabrew, Jr.,
Virginia Browning and Reba Hatton ("Genecov"), appeal the trial court's grant of summary
judgment in favor of Roosth Production Company, Sam Roosth Individually, and Plains Marketing,
L.P. ("Roosth"). In four issues, Genecov contends that the trial court erred in rendering summary
judgment against it based on res judicata. We affirm in part and reverse and remand for further
proceedings in part. 


Background


 In 1998, Genecov filed suit against Roosth ("Genecov I"), seeking a declaratory judgment
on two major issues. First, Genecov sought a declaration that various oil and gas leases, obtained
in 1983 and a part of the Turlington Gas Unit No. 2 in Henderson County, remained valid and that
it was the lawful operator of the unit as opposed to Roosth, listed as the operator of record with the
Texas Railroad Commission. Eventually, the parties agreed to submit the lease validity issue to
arbitration. This issue was submitted to three arbitrators and the arbitrators were to decide three
specific questions:


 1) Are the Unit Leases, insofar as they cover the area of the Turlington Gas Unit No. 2, valid
and in force or have they expired, thereby causing the new leases to be valid?

 2) If the new leases are valid, are they subject to the Operating Agreement?

 3) If the Unit Leases expired, was the expiration the result of gross negligence or willful
misconduct by the operator of the Turlington Gas Unit No. 2?


The issue of who would be the lawful operator of the Turlington Gas Unit No. 2 was not submitted
to the arbitrators. 

 On June 20, 2000, the arbitrators rendered their decision and found that the unit leases,
insofar as they covered the area of the Turlington Gas Unit No. 2, were valid, in force, and had not
expired. This order answered the three questions submitted to the arbitrators. On July 10, 2000, the
arbitrators also submitted a supplemental arbitration order in which they awarded attorney's fees and
other costs related to the "arbitrated issues" to Genecov. When the supplemental arbitration order
was issued, arbitrator Melvin Cockrell prepared a prescient special concurrence stating that he had
"broader concerns":


 Parties to a long, expensive and continuing controversy, of which this arbitration is only a part, have
put before this panel three highly circumscribed questions.... Speaking only for myself, I wonder why
the parties selected these questions as dispositive and not others. Consider the historical setting. Two
close family groups split, and with the split agreed to separate their properties and operations thereof. 
Tensions continued.... The parties for good and sufficient reasons selected the three circumscribed
questions noted above as dispositive. The test we were left to use in our deliberations was developed
for mineral owner-lessee disputes. It really does not accommodate disputes between co-owners. The
panel has given its considered answer. But something seems wrong with this picture. What has been
accomplished? After much aggravation and expenditure of valuable time and resources that could
have gone to beneficial business purposes, it would appear from my vantage point, admittedly through
a glass darkly, that the parties are pretty much where they started: With the Roosth operators. Did we
help?, I hope so, but I doubt it. Ultimately I suspect this is really not an oil and gas case.


 Genecov immediately filed a "Motion for Judgment on Arbitration Award" in the 392nd
Judicial District Court of Henderson County. A judgment on the arbitration award was also
submitted, ordering Roosth to pay the attorney's fees and costs assessed by the arbitrators. However,
rather than confirming the old leases, the proposed judgment went directly to the issue of who the
operator of the Turlington Gas Unit No. 2 would be and stated "the Genecov Group is declared to
be the lawful operator of the leases." 

 On August 17, the trial court held a hearing on Genecov's motion. The next day, it entered
the following findings of fact and conclusions of law:



 Plaintiffs [Genecov], with the agreement of the Defendant [Roosth], framed the issues and
relief sought in the Agreement to Arbitrate Issues in Dispute (the "Agreement").

 The Agreement states that it is an agreement to arbitrate "the ultimate issues existing in the
above action, brought by plaintiffs."

 The Arbitration Order (the "Award") states that as to the issues it was "charged" to decide,
it only ordered that the "old" unit leases were in effect, not the "new" leases.

 Plaintiffs now want the Court to confirm the Award. With no case law on point (presented
by either side), Plaintiffs argued that the Award was tantamount to a jury finding and that the 
Court should then take that finding (that the "old" leases were in effect) and apply
("confirm") it to the previous "evidence" (Summary Judgment evidence?) and fashion a
judgment that grants the relief of determining The Genecov Group as the lawful operator,
inter alia.

 The Defendant argued that the applicable statutes requiring this Court to "confirm" an award
do not mean treating the arbitration as fact finding but as a final judgment.

 According to Porter & Clements L.L.P. v. Stone, 935 S.W.2d 217, 221, an arbitrator's award
has the same effect as a judgment, and the trial court cannot substitute its judgment for the
arbitrator's.

 Plaintiffs filed no pleadings to vacate, correct, or modify the Award.

 Plaintiffs did not seek to re-open arbitration.

 The Court finds that the framing of the arbitration issues should be construed, if in dispute,
against the Plaintiffs, who drew the issues, and who were the only parties seeking affirmative
relief.

 The Court finds that the Plaintiffs in so framing the issues, acted not unlike a plaintiff in trial
court, submitting issues to the jury more limited in scope than could support all of its
pleadings or relief sought. In other words, it appears to the Court that the Plaintiffs waived
their relief of determination of the operator by the scope of the arbitrated issues and relief
sought and by the Award itself (with arbitration not re-opened to clarify, etc.).

 The Court does not find that the statute or common law requires it to do other than confirm
the Award itself, if on its face, it will support a judgment.

 The Court finds that the Award can support a judgment that the "old" leases (and not the
"new" leases) are the leases under which the minerals are to be produced. The Court makes
no order on removal of the operator or other relief sought, except as to costs....




 On August 29, 2000, the court entered a final judgment, confirming that "the Unit leases
insofar as they cover the area of the Turlington Gas Unit No. 2, are valid, in force and have not
expired." It also awarded Genecov its attorney's fees and costs. No mention was made in this final
judgment about who was the lawful operator of the unit.

 On December 14, 2000, Genecov filed a second suit against Roosth ("Genecov II"). In this
new suit, Genecov sought a declaratory judgment, asking the trial court to find that it was the lawful
operator of the Turlington Gas Unit No. 2. It further sought relief against Roosth for the conversion
of production proceeds from the Turlington No. 1 and No. 2 wells, which occurred both before and
after August 29, 2000, the date the final judgment was entered in Genecov I. Further, Genecov
sought damages from Roosth as well as Plains Marketing, L.P. (who was not a party in Genecov I)
for conversion of production proceeds after August 29, 2000. Genecov also claimed that Plains
Marketing, L.P. had retained part of Genecov's proceeds from other wells unrelated to the leases that
were the subject of the final judgment in Genecov I. As a result, Genecov alleged that Plains
Marketing, L.P. had been unjustly enriched at Genecov's expense. Finally, Genecov contended that
there was a new dispute between the parties regarding the payment of the litigation expenses ordered
in the Genecov I final judgment. Roosth filed a motion for summary judgment, contending that all
of Genecov's claims in Genecov II were barred by the final judgment entered in Genecov I. 
Following a hearing, the trial court entered a final summary judgment for Roosth on February 27,
2002. Genecov timely filed this appeal after the trial court denied its motion for new trial. 

 In four issues, Genecov contends that res judicata does not apply to the well operator issue
raised in Genecov II and that all other issues raised in Genecov II were either not raised in Genecov
I or were based on facts which had occurred after Genecov I. 


Standard of Review


 Summary judgment is appropriate if the motion and accompanying evidence establish that
the moving party is entitled to judgment as a matter of law on the issues set forth in the motion. 
Tex. R. Civ. P. 166a(c). A defendant moving for summary judgment must either disprove at least
one element of the plaintiff's theory of recovery or plead and prove all essential elements of an
affirmative defense. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex.
1979). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant and indulge every reasonable inference in the non-movant's favor. Science Spectrum, Inc.
v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). On appeal, the movant still bears the burden of
showing that there is no genuine issue of material fact and that the movant is entitled to judgment
as a matter of law. Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999). Therefore,
we review the trial court's summary judgment de novo. See Natividad v. Alexsis, Inc., 875 S.W.2d
695, 699 (Tex. 1994). 


Res Judicata - Unit Operator


 In its first issue, Genecov alleges that res judicata does not apply to Genecov II because in
Genecov I, the trial court only had authority to enter a judgment on the validity of the leases. In its
second issue, Genecov contends that in Genecov II, it was entitled to seek a determination of the
legal consequences of the arbitrator's award in Genecov I that declared the 1983 leases were valid. 
In its third issue, Genecov argues that the supplemental relief provisions of section 37.011 of the
Texas Civil Practices and Remedies Code permit it to bring a new action to determine the rightful
unit operator issue after Genecov I determined that its leases were valid. Because these three issues
are so intertwined, we will consider them together.

 Res judicata, also known as claim preclusion, prevents the re-litigation of a finally
adjudicated claim and related matters that should have been litigated in a prior suit. State and
County Mut. Fire Ins. Co. v. Miller, 52 S.W.3d 693, 696 (Tex. 2001). Res judicata requires proof
of the following elements: 1) a prior final judgment on the merits by a court of competent
jurisdiction, 2) identity of parties or those in privity with them, and 3) a second action based on the
same claims as were raised or could have been raised in the first action. Amstadt v. U.S. Brass
Corp., 919 S.W.2d 644, 652 (Tex. 1996). A determination of what constitutes the subject matter of
a suit requires an analysis of the factual matters that make up the gist of the complaint. Barr v.
Resolution Trust Corp., 837 S.W.2d 627, 630 (Tex. 1992). Any cause of action which arises out
of the same facts should, if practicable, be litigated in the same lawsuit. Id.

 In support of its contention that the principles of res judicata do not apply to Genecov II,
Genecov relies on Valley Oil Co. v. City of Garland, 499 S.W.2d 333, 336 (Tex. App.- Dallas 1973,
no writ). In Valley Oil, the City of Garland ("Garland") sought an injunction against a gasoline
station that was operating in an area prohibited by a zoning ordinance. Id. at 335. However, Valley
Oil Company defeated Garland's request for an injunction. On appeal, the Dallas Court of Appeals
reversed and rendered judgment for Garland, stating that Valley Oil Company was violating the
zoning ordinance. In its request for relief in the court of appeals, Garland did not seek to have the
court issue an injunction against Valley Oil Company. After the court of appeals' mandate was
issued, Garland filed a "Petition for Injunction to Enforce the Judgment" in the trial court. Valley
Oil Company answered with a plea of res judicata. The Dallas Court of Appeals determined that
the injunction, granted by the trial court after its mandate had been issued, was not barred but was
rather a proper means of giving the judgment full effect. The court of appeals determined that the
police power to regulate the use of property was appropriate in this case although it went against the
usual rule of res judicata. Id. at 336. The court's rationale was that the losing party would normally
be expected to recognize the police power of a political subdivision of the sovereign (the City of
Garland) but that if it failed to do so, the sovereign should be able to enforce its judgment by
subsequent coercive orders. Id.

 Roosth contends that the principle enumerated in Valley Oil does not apply to the instant case
because in Valley Oil, the issue involved the coercive use of police power by a political subdivision,
whereas this case does not. We agree. Genecov and Roosth are two private parties. Neither party
is a political subdivision with the use of coercive police powers; accordingly, Valley Oil is not
applicable to the case before us. 

 Genecov further contends that Genecov II is outside the ambit of res judicata because it is
a legitimate attempt to enforce the arbitration order and the legal implications of the trial court's final
judgment confirming that order. In support of this argument, Genecov cites Fluor Daniel, Inc. v.
H.B. Zachry Co., Inc., 1 S.W.3d 166, 170 (Tex. App.- Corpus Christi 1999, pet. denied). In Fluor
Daniel, Fluor and Zachry entered into a settlement agreement with the plaintiff where Fluor
contributed $800,000.00 and Zachry contributed $50,000.00 into a settlement fund. Id. at 167. 
Under the agreement, Fluor and Zachry agreed to remain parties to the proceeding and to arbitrate
the comparative responsibility between the two of them. The arbitration panel decided that Fluor
and Zachry were each ten percent liable and that the plaintiff's employer (who had not even been a
party to the arbitration or even the original lawsuit) was liable for eighty percent. The district court
later confirmed the arbitration panel's decision in its final judgment. Subsequent to the trial court's
entry of judgment, Zachry contended that it was liable for only ten percent of the plaintiff's injuries,
or a total of $85,000.00 of the agreed settlement amount. Fluor disagreed and sued Zachry for an
initial $375,000.00, contending that Zachry was liable for one-half of the plaintiff's injuries, or a
total of $425,000.00 ($50,000.00 initially tendered plus an additional $375,000.00). Id. at 168. 
Zachry alleged that it was entitled to a summary judgment against Fluor based upon the principles
of res judicata and collateral estoppel. The court of appeals determined that the suit was not res
judicata because the trial court was only being asked to give effect to the prior judgment and not to
reapportion liability. Id. at 170. 

 Roosth argues that Fluor Daniel is not applicable to the instant case. We agree. In Fluor
Daniel, there was no request that a new finding be made regarding fault or liability. Zachry was only
interested in determining how the apportionment should be applied to the settlement fund; i.e, was
it liable for $425,000.00 or $85,000.00? In the first suit between Fluor and Zachry, the trial court
had only determined the percentage of liability, not how a settlement fund would be apportioned
based upon that liability. The parties assumed that the first court would apportion their liability in
a way that it would equal one hundred percent. However, when a nonparty was determined by the
arbitrators to be eighty percent liable, the parties were left without guidance as to how the
$850,000.00 should be apportioned between them. It was necessary for the court in a subsequent
suit to specifically apportion the fund based on the liability that had already been determined. In
Genecov I, the fact of who should be the operator was not determined. Instead of asking for
additional relief on the operator issue in Genecov II, Genecov is seeking the same relief it sought in
Genecov I. Therefore, Genecov's claims related to the operator issue fit squarely within the ambit
of res judicata. 

 When there is a legal relationship, such as under a lease, a contract, or a marriage, all claims
arising from that relationship will arise from the same subject matter and be subject to res judicata. 
Pinebrook Properties, Ltd. v. Brookhaven Lake Property Owners Ass'n, 77 S.W.3d 487, 497 (Tex.
App.- Texarkana 2002, pet. denied). Claims in a business relationship should be combined when
they involve common core facts. Id. When the same facts are involved, two trials should be avoided
by combining all of the matter existing between the parties in one suit. See Twyman v. Twyman,
855 S.W.2d 619, 625 (Tex. 1993). Here, the same facts which led Genecov to seek a determination
of who the unit operator was in Genecov I existed in Genecov II. Nothing in the record indicates that
any new facts had emerged regarding the proper unit operator. Genecov contends that because the
arbitrators did not consider the unit operator issue in Genecov I, it should be able to have that issue
determined in Genecov II. It further contends that the determination of the unit operator issue was
contingent upon the court's determination of the validity of the 1983 leases. This argument fails
because the contingent nature of a claim does not preclude the operation of res judicata. Pinebrook
Properties, Ltd., 77 S.W.3d at 498. 

 A final judgment is conclusive of all issues that are raised in the pleadings. See Samedan
Oil Co. v. Lewis Dreyfus Natural Gas Corp., 52 S.W3d 788, 794 (Tex. App.- Eastland 2001, pet.
denied). Here, Genecov I put the unit operator issue before the court. As the trial court in Genecov
I pointed out in its findings of fact and conclusions of law, Genecov had the burden of bringing this
issue forward. This burden on Genecov continued even when it agreed to arbitrate Genecov I. 
Accordingly, we hold that the unit operator issue in Genecov II was the same claim that had been
raised in Genecov I; therefore, this claim is barred by res judicata in Genecov II.

 Finally, Genecov contends that in asking the trial court in Genecov II to determine the
operator issue, it is seeking supplemental relief as contemplated by Section 37.011 of the Declaratory
Judgment Act. Tex. Civ. Prac. & Rem. Code Ann. § 37.011 (Vernon 1997 & Supp. 2003). 
However, this statute specifically contemplates "further relief based on the declaratory judgment." 
Id. We believe the Fluor Daniel case illustrates the type of relief that is contemplated by the statute. 
In Fluor Daniel, the second litigation arose out of a new issue between the parties that had been
created by the apportionment of only ten percent liability to each of them. Fluor Daniel, 1 S.W.3d
at 169. "Further" is defined as "in addition." The American Heritage College Dictionary 553
(3d ed. 1997). In Genecov II, Genecov was not seeking additional relief regarding the designation
of the unit operator; rather, it was seeking to have the same issue determined based on the same facts
it had pleaded in Genecov I. Accordingly, Genecov's issues one, two and three are overruled.


Res Judicata - New Issues


 In its fourth issue, Genecov contends that the monetary and other disputes which arose
between the parties after the final judgment in Genecov I are not precluded from being litigated in 
Genecov II by res judicata. Roosth contends that these issues are tied to Roosth's position as unit
operator and they are therefore barred by res judicata from being litigated in Genecov II. 

 A judgment in one suit will not operate as res judicata to a subsequent suit on the same
question between the same parties where, in the interval, facts have changed or new facts have
occurred which may alter the legal rights or relations of the parties. Hernandez v. Del Ray
Chemical Int'l, Inc., 56 S.W.3d 112, 116 (Tex. App.- Houston [14th Dist] 2001, no writ). In a
supplemental response to Roosth's motion for summary judgment in Genecov II, Genecov presented
the affidavit of John Procter, its oil and gas vice president. Procter's affidavit stated that the dispute
in Genecov II regarded monies involving the Turlington No. 1 well and improper use and payment
of funds by Roosth as the operator of the Turlington No. 2 well. Causes of action which could not
have accrued at the time of a previous suit are not barred by the principle of res judicata. See
Compania Financiara Loibano, S.A. v. Simmons, 53 S.W.3d 365, 367. Further, we must indulge
every reasonable inference and resolve any reasonable doubts in the non-movant's favor. Rhone-Poulenc, Inc., 997 S.W.2d at 223. Therefore, we hold that none of the issues raised by Genecov,
other than the issue of who is the lawful unit operator, is barred by res judicata because they are new
or different issues from those raised in Genecov I. Genecov's issue number four is sustained. 


Conclusion


 The trial court's summary judgment is affirmed in part and reversed and remanded in part. 
The trial court's summary judgment is affirmed as it applies res judicata to the issue of declaring
who is the lawful operator of Turlington Gas Unit No. 2. The summary judgment of the trial court
is reversed and remanded for further proceedings on all other causes of action alleged by Genecov
in Genecov II. 

 JAMES T. WORTHEN 

 Chief Justice

 

Opinion delivered May 21, 2003.

Panel consisted of Worthen, C.J. and Griffith, J.




(PUBLISH)